IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              :        CHAPTER 7
                                    :
PAUL WAYNE WOOD                     :        BANKRUPTCY
                                    :        NO.   07-01864
            Debtor.                 :

ORDER ON MOTION FOR SANCTIONS FOR VIOLATION OF THE
AUTOMATIC STAY (Doc. # 70)

The Court held a hearing on Debtor's Motion for Sanctions for Violation of the Automatic Stay. Appearing on behalf of Debtor was Nancy L. Thompson. Carol F. Dunbar appeared as the Chapter 13 Trustee. No representative of creditor, Navy Federal Credit Union, appeared. The Court heard argument on the Motion for Sanctions and took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

STATEMENT OF THE CASE

Debtor's Chapter 13 bankruptcy plan was confirmed by the Court on January 23, 2008. NFCU was aware of the Chapter 13 bankruptcy. It filed a proof of claim on July 30, 2007, for $2,096.26. Debtor now seeks sanctions against creditor Navy Federal Credit Union ("NFCU") arguing that NFCU has violated the automatic stay. On or around December 2, 2011, NFCU sent a letter to Debtor attempting to collect a debt that was a part of Debtor's Chapter 13 bankruptcy.

NFCU continued sending collection letters for several months.  Debtor eventually filed the current motion and the Court scheduled the matter for a hearing.

The Motion for Sanctions and the Court's notice of hearing were served on NFCU.  NFCU continued to attempt to collect the debt.  NFCU did not appear at the hearing on the Motion for Sanctions.  Debtor presented evidence and the Court took the matter under advisement.  Upon review of the evidence, the Court finds that Debtor's Motion for Sanctions for NFCU's violation of the automatic stay should be granted.

## BACKGROUND

Debtor, Paul Wayne Wood, filed a voluntary Chapter 13 petition on July 28, 2007.  NFCU received notice of the bankruptcy through first-class mail and by electronic data transmission.  NFCU filed a proof of claim on July 30, 2007, in the amount of $2,096.26.  It did not object to the proposed plan.  The Court confirmed Debtor's Plan on January 23, 2008.  Since the Plan's confirmation, Debtor has made approximately forty (40) payments to the Trustee.  Trustee in turn has made payment to Debtor's creditors, including NFCU.

In early December 2011, Debtor received a letter from NFCU stating: "This letter will serve as notification that your above referenced loan has now been classified as a default." (Debtor Exh. 1.)  The letter further stated: "You may still avoid the harsh consequences of possible litigation by remitting $1,644.64 plus

interest within 15 days.  Your failure to remit this amount may result in the actions described above." (Id.)  The actions threatened in the letter included litigation as a result of Debtor's "violation of civil law" and "adverse affects" to Debtor's ability to obtain future credit.  NFCU's Vice President for Collections signed the letter.  Debtor received at least two (2) additional letters from NFCU containing the same language and threats.

  Debtor's counsel filed a Motion for Sanctions against NFCU.  NFCU received electronic notice of the filing.  Debtor's counsel also sent a copy directly to the Vice President for Collections and to NFCU, by first-class mail at the address provided on the proof of claim.  The notice setting hearing was sent to NFCU electronically and through a BNC Certificate of Mailing to NFCU's mailing address at P.O. Box 3100, Merrifield, VA 22119.  Counsel for Debtor additionally electronically filed an exhibit list for the hearing and sent both the exhibit list and copies of the exhibits to NFCU.  Counsel for Debtor did not receive any response from NFCU as to the motion, notice of hearing, or exhibits and exhibit list.

  NFCU continued to send notices to Debtor after Debtor filed this Motion for Sanctions.  Debtor testified that these notices surprised him and it felt like a slap in the face.  He said he was angry, upset, and did not understand why the letters were being sent since he was making payments to the Trustee.

3

Debtor seeks an award of $10,000 plus attorney's fees.  Debtor seeks $3,000 in compensatory damages and $7,000 in punitive damages.  Debtor seeks $1,860.00 in attorney fees for 11.90 hours of work in connection with the Motion.

## DISCUSSION

The filing of a bankruptcy petition imposes the automatic stay of § 362 which prohibits creditors from engaging in "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(5); see In re Forkner, No. 10-01585, 2010 WL 5462543, at *3 (Bankr. N.D. Iowa 2010).  A creditor may not continue any pre-petition judicial action against the debtor or enforce a judgment obtained before the commencement of a debtor's case.  11 U.S.C. § 362(a)(1) & (2).  The § 362 automatic stay "'is among the most basic of debtor protections under bankruptcy law.'"  In re Vierkant, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999) (quoting Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)); see In re Forkner, 2010 WL 5462543, at *3.

The scope of the automatic stay is extremely broad.  In re Hromidko, 302 B.R. 629, 632 (Bankr. N.D. Iowa 2003) (citing In re Knaus, 889 F.2d 773, 774 (8th Cir. 1989)); 1; In re Forkner, 2010 WL 5462543, at *3.  "Congress intended the automatic stay to stop 'all collection efforts, all harassment, and all foreclosure

4

actions' and 'prevent creditors from attempting in any way to collect a prepetition debt.'" In re Forkner, 2010 WL 5462543, at *3 (quoting In re Hromidko, 302 B.R. at 632). "Because of its fundamental importance, courts must display a certain rigor in reacting to violations of the automatic stay." Id. (quoting In re Pearce, 400 B.R. 126, 133 (Bankr. N.D. Iowa 2009)).

"To recover damages under § 362, Debtors must show that they were injured by the violation of the stay and that the violation was willful." Id. at *5 (quoting In re Lankford, 305 B.R. 297, 302 (Bankr. N.D. Iowa 2004)). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." Id. (citing Knaus, 889 F.2d at 775; In re Cullen, 329 B.R. 52, 57 (Bankr. N.D. Iowa 2005); In re Goodfellow, 298 B.R. 358, 361 (Bankr. N.D. Iowa 2003); In re Dencklau, 158 B.R. 796, 800 (Bankr. N.D. Iowa 1993)). "Intent is irrelevant." Id. (citing Dencklau, 158 B.R. at 800 ("A willful violation of the automatic stay does not require a specific intent to violate a court order . . . [n]or does it require a specific intent to violate the automatic stay.  A violation may be willful even if an entity believes the stay is not applicable to its conduct.") (citations omitted)).

NFCU did not appear at hearing.  Debtor presented ample evidence to show that NFCU had knowledge of the bankruptcy petition.  NFCU filed a proof of claim in the bankruptcy five years ago and has been receiving periodic payments

5

from Trustee on the claim under the provisions of the Plan. By sending the collection letters, with knowledge of the bankruptcy, NFCU willfully violated the automatic stay. As a result of the finding that NFCU acted willfully, the Court must evaluate the appropriate remedy under section 362. See id. at *6 (citing In re Anderson, 430 B.R. 882, 888 (Bankr. S.D. Iowa 2010)).

If a debtor proves a violation of the automatic stay, the court must award damages. Sanctions for violation of the automatic stay provision are governed by 11 U.S.C. § 362(k). Section 362(k) of the Bankruptcy Code provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section **shall recover actual damages, including costs and attorneys' fees**, and, in appropriate circumstances, may recover punitive damages.
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k) (emphasis added). "In imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances." Forkner, 2010 WL 5462543, at *5 (citing Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 782 (8th Cir. 1987)).

"[T]he mere violation of the automatic stay constitutes an injury to the debtor inasmuch as the creditor's violation restricts the debtor's breathing spell and subjects the debtor to continued collection efforts, possibly including harassment and intimidation." Jackson v. Dan Holiday Furniture, LLC (In re Jackson), 309

B.R. 33, 37 (Bankr. W.D. Mo. 2004); see In re White, 410 B.R. 322, 326 (Bankr. M.D. Fla. 2009). "Actual damages are a matter of proof, and in the absence of such proof, a nominal award for actual damages serves as a vindication of debtor's rights." Jackson, 309 B.R. at 38 (citing Solfanelli v. Meridien Bank (In re Solfanelli), 230 B.R. 54, 69 (M.D. Pa. 1999)). The Eighth Circuit has held that attorneys' fees are not appropriate if actual damages are not supported. Lovett v. Honeywell, Inc., 930 F.2d 625, 629 (8th Cir. 1991); In re Capion, No. 98-4142, 2000 WL 35798603, at *6 (Bankr. S.D. Iowa 2000); see In re Hutchings, 348 B.R. 847, 885 n.24 (Bankr. N.D. Ala. 2006) (listing cases).

> In Lovett, 930 F.2d at 629, the Eighth Circuit interpreted 11 U.S.C. § 363(h)—based on the narrow set of facts presented in that case—as requiring actual damages before a party could recover attorneys' fees under the statute because "costs and attorneys' fees, by the terms of § 362(h) are allowable only to embellish 'actual damages.'"

In re Jackson, 309 B.R. at 38 n.6 (citation omitted).

The testimony presented by Debtor pertained mostly to emotional distress damages as a result of the stay violation. "Emotional distress damages for automatic stay violations are available if the individual debtor puts on clear evidence establishing that significant harm occurred as a result of the violation." In re L'Heureux, 322 B.R. 407, 411 (B.A.P. 8th Cir. 2005); see In re Anderson, 430 B.R. at 889. "As for damages for emotional distress, the Court notes that medical or other expert evidence is not required to prove emotional distress and

7

that [the Debtor's] own testimony . . . may be sufficient to prove entitlement to damages." In re Jackson, 309 B.R. at 39 (citing Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997)). "Nevertheless, before the Court can award damages for emotional distress, [the Debtor] must present competent evidence of genuine injury." Id. (citing Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999)).

Debtor testified that he was angry and upset. This testimony, standing alone, is not "competent evidence" a "genuine injury" occurred as a result of the violation. See id. Debtor suffered no physical injury, was not medically treated for any emotional or psychological injury, and no other witnesses testified to corroborate any form of emotional distress. Despite this, NFCU's actions were annoying and clear violations of the statute. Under the circumstances of this case, the Court finds that a nominal award of $1.00 is nevertheless appropriate given NFCU's repeated violations of the automatic stay. See In re Jackson, 309 B.R. at 37–38 (where no proof of actual damages, "a nominal award for actual damages serves as a vindication of debtor's rights").

Debtor's counsel filed a fee application indicating the time expended as a result of the stay violation. The amount requested is reasonable and supported by documentation. Debtor is entitled to recover the amount requested—$1,860.00. See In re Thompson, 426 B.R. 759, 765 (Bankr. N.D. Ill. 2010) (citing Sternberg v.

8

Johnston, 595 F.3d 937, 949 (9th Cir. 2010); In re Repine, 536 F.3d 512, 522 (5th Cir. 2008)); Caw v. Seward (In re Caw), 16 B.R. 631, 633–34 (Bankr. W.D. Mo. 1981) (damages for violation of stay include compensatory damages, costs and attorneys' fees).

Debtor also seeks punitive damages as a result of the violation.  "Egregious, intentional misconduct by a creditor violating the automatic stay will support a punitive damages award."  In re Forkner, 2010 WL 5462543, at *5 (citing In re Ketelsen, 880 F.2d 990, 992 (8th Cir. 1989)).  "'Punitive damages must have a rational relationship to actual damages.'"  Id. (quoting Lankford, 305 B.R. at 303). "'Courts also may consider the deterrent effect in determining punitive damages.'" Id. (quoting In re Heghmann, 316 B.R. 395, 406 (B.A.P. 1st Cir. 2004)).

> Consideration may be given to "the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor."  In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (citing In re Flack, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999); In re Klein, 226 B.R. 542, 545 (Bankr. D.N.J. 1998); In re Wills, 226 B.R. 369, 376 n.8 (Bankr. E.D. Va. 1998)).  Other factors which may be examined to determine whether a creditor's actions warrant punitive damages include: whether or not a simple mistake was the cause of the violation; whether the creditor stopped collection efforts immediately once it was notified of its error; whether the creditor is a sophisticated party; whether the stay violation is a pervasive practice of the creditor and punitive damages are needed to correct the problem; and the number of times the stay was violated. See In re Mitchell, No. 08–8448–AJM–7, 2009 WL 301910 at *4 (Bankr. S.D. Ind. 2009); In re Gorringe, 348 B.R. 789, 792, 795 (Bankr. D. Idaho 2006) (noting the fact that the creditor apparently inadvertently did not follow its own procedures and

> stopped collection efforts as soon as the error was discovered); In re Cullen, 329 B.R. at 58 (recognizing "[t]he creditor's status as a sophisticated player in the credit industry" as a relevant factor in awarding punitive damages, as well as whether or not the creditor's actions were a pervasive practice for the creditor); In re Bivens, 324 B.R. 39, 43–44 (Bankr. N.D. Ohio 2004) (considering the excuse for the collection efforts and the sophistication of the creditor as relevant factors).
>
> State law standards may also be applied to determine whether punitive damages are appropriate. In Iowa, "any award of punitive damages must be tested by examining (1) the extent and nature of the outrageous conduct, (2) the amount necessary to deter such conduct in the future, (3) the relative size of the punitive damages award as compared to actual damages and, (4) surrounding circumstances bearing on the relationship of the parties." Hamilton v. Mercantile Bank of Cedar Rapids, 621 N.W.2d 401, 407 (Iowa 2001).

In re Anderson, 430 B.R. at 889–90.

Here, there is no dispute there were at least three (3) violation of the automatic stay. Punitive damages are appropriate as a penalty for NFCU's cavalier behavior. NFCU had notice of the bankruptcy filing—in part demonstrated by its filing of a proof of claim. Further, it accepted payment under the Plan from Trustee for over three years and still resumed collection efforts. The Motion for Sanctions did not stop NFCU from attempting to collect the debt. NFCU sent additional letters after Debtor filed the motion. After weighing these factors the Court finds that Debtor is entitled to punitive damages in the amount of $1,500.00—$500 for each letter admitted into evidence that violated the stay. See In re Stanton, No. BK10-42169, 2010 WL 4608268 (Bankr. D. Neb. 2010).

**WHEREFORE,** Debtor's Motion for Sanctions for Violation of the Automatic Stay by Navy Federal Credit Union (ECF Doc. # 70) is **GRANTED**.

**FURTHER,** the Court finds that Debtor Paul Wayne Wood established, by a preponderance of evidence, that Navy Federal Credit Union violated the § 362(a) automatic stay and therefore is entitled to damages pursuant to § 362(k).

**FURTHER,** the Court awards Debtor attorney's fees in the amount of $1,860.00.

**FURTHER,** Debtor is awarded actual damages of $1.00 and punitive damages in the amount of $1,500.

**FURTHER,** judgment of the foregoing shall enter accordingly.

Dated and Entered:   May 24, 2012

_____
THAD J. COLLINS
**CHIEF BANKRUPTCY JUDGE**